Filed 10/18/24  Roy v. Roy CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NEVENA ROY,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>JOYANTO ROY,<br><br>       Defendant and Appellant. | A166932<br><br>(San Mateo County<br>Super. Ct. No. 17-FAM-03270) |

Joyanto Roy (Father) appeals from a December 2022 custody and visitation order that was designated by the family court as permanent and final.  Father argues that the family court erred when it issued temporary custody and visitation orders the year before, in December 2021, allowing Nevena Roy (Mother) to move from San Mateo County to San Diego with their daughter N.R. (Minor) who was then four years old, and granting Mother sole physical custody of Minor.[1]  He also argues that the family court abused its discretion when it issued the December 2022 permanent order, which maintained Mother's sole physical custody and provided for visitation

---

[1] The family court's December 2021 order was not directly appealable because it was a temporary custody order (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 558); we review Father's claims of error as to that order as part of our review of the final custody order, which incorporates provisions of the temporary order.  (Code Civ. Proc., § 906.)

1

between Father and Minor every other weekend and every other Wednesday. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Proceedings from December 2017 to June 2021*

In December 2017, Mother petitioned for dissolution of her marriage to Father. Minor was then less than one year old. Disputes between the parents concerning custody and visitation arose early in the proceedings, as reflected in the transcript of a July 2018 hearing.

In April 2019, the family court issued a stipulated custody and visitation order giving Mother and Father joint legal and physical custody of Minor, with a parenting schedule described as "a 2-2-3 plan with evenly shared custodial time." Nothing in the stipulated order states that it was or was intended to be a final determination of custody and visitation.

A "Judgment for Dissolution—Status Only" was entered in September 2020. The effective date of termination of marital status was September 2, 2020. A judgment was entered in August 2021 resolving various financial matters.

B. *Mother's Proposed Relocation to San Diego*

In June 2021, when Minor was four years old, Mother filed a request for an order modifying custody and visitation that would allow Minor to move with Mother from San Mateo County to San Diego and award Mother primary physical custody. A two-day evidentiary hearing on the request was held in November 2021. Father, who had been represented by counsel throughout the proceedings, was represented by his attorney on the first day of the hearing, November 9, 2021. Father's attorney filed a substitution of attorney in advance of the second day of the hearing, and Father represented himself on the second day. Over the course of the hearing, the court heard

2

testimony from four witnesses and admitted numerous documents into evidence. After hearing argument, the court announced its findings and conclusions from the bench and granted Mother's request.

As reflected in the court's statement of decision, entered in December 2021, the family court presumed that Mother would move to San Diego, and therefore the question before it was "what custody and visitation orders are in the best interest of [Minor]." The court found that there was no "final permanent custody order in th[e] case" and that the then-existing custody and visitation orders were temporary orders. The court found that Minor had spent equal time with each parent since December 2020.[2] The court found detriment to Minor from the proposed relocation in that she would have decreased time with Father, but determined based on the totality of the evidence that it was in Minor's best interest to authorize the relocation and change in physical custody.

The court stated that it had considered the parents' past conduct in determining whether the move-away request was in Minor's best interest, and noted that during the past two years the parties had been before the court "with substantial litigation" and Father had "repeatedly demonstrated his inability to put [Minor's] interest before his own, his inability to co-parent

_____

[2] Although Mother and Father stipulated to an equal timeshare in April 2019, the actual timeshare had been different for part of the time between then and December 2020. The court found that Father had extended periods of "absence from, or limited involvement in, [Minor's] life," including a period preceding February 2020 during which he had about a 15 percent timeshare and a period from March 2020 to October 2020 when he had "virtually no contact with" Minor.

cooperatively, and his inability to communicate civilly."[3] The court set forth several "concrete examples of [Father's] inability to put [Minor's] interest before his own," including that Father had at one time sought ex parte relief to prevent Mother from traveling to Serbia with Minor, but had also proposed that Mother and Minor move to Serbia while objecting to the proposed relocation to San Diego; that Father demanded Mother's compliance with an order concerning the time of exchanges in time share, even though Father refused to comply with the order and admitted that the parties had not followed the order for years; that Father claimed that the relocation to San Diego would be a financial burden on him, but had recently bought a car for which he was paying $1,000 per month; and that Father asked the court to deny Mother's requested relocation "because she has 'access to parenthood' with her significant other's children."

The court found that Mother's proposed move "is motivated by the best interest of [Minor], including, but not limited to, stability—in housing, parenting and other areas, and the presence of her biological family and extended Serbian community, which is half of [Minor's] ethnicity/heritage. On the other hand, [Father] currently lives in a shared living situation with 6-8 other people, where he intends to live forever, and stated his position that having permanent housing (i.e., living in an owned home) would provide no benefit to [Minor.] Further, [Father] testified that there was no benefit to [Minor] to have access to her biological family, specifically [Mother's] brother, who is also relocating to San Diego." The court further found that Mother was the parent more likely to encourage an ongoing relationship with the

---

[3] The exhibits admitted into evidence, which are not included in the record on appeal, include emails and text messages between Mother and Father.

4

other parent, based on evidence that Mother allowed Father to take Minor to extracurricular activities that he scheduled during Mother's custodial time and that Mother encouraged communication between Minor and Father during vacations and holidays. Father, on the other hand, refused to allow Mother to communicate with Minor during vacations and holidays and refused to even respond to Mother's requests. The court found that Mother's requested relocation would not unduly burden Father's frequent and continuing contact with Minor, and that Mother was "the parent more likely to foster that contact."

The court awarded Mother and Father joint legal custody of Minor, awarded Mother sole physical custody, and established a detailed schedule for "Timeshare/School Breaks/Vacations," with instructions as to the arrangement of exchanges. Father's time with Minor included at least one full weekend per month, with Father traveling to San Diego or Mother traveling with Minor to the Bay Area. The parents were to communicate in advance as to where each visit would take place and their travel arrangements, and Father was permitted to spend additional time with Minor if he was in San Diego for visits. Father's time with Minor also included one week per month in the Bay Area during Minor's three-month-long summer vacation, to be increased to two weeks per month starting in 2023; and one week during each of Minor's winter, spring, and fall breaks from school. If Father spent custodial time with Minor in San Diego, he was to ensure that she attended all her scheduled extracurricular activities and lessons. The order also provided for at least one half-hour-long telephone or video call per day between Minor and whichever parent did not have custodial time.

C.    *Proceedings After the December 2021 Statement of Decision*

Father represents, and the register of actions reflects, that in the year after the statement of decision was issued, he filed several requests for orders. Father has not included any of those requests in the record on appeal, nor has he included any requests or declarations concerning custody and visitation that were filed by Mother.

It appears that in early 2022, after Mother moved to San Diego with Minor, Father (who had testified in November 2021 that he intended to live in San Mateo County for the rest of his life) also moved to San Diego. In January 2022, once again represented by counsel, Father filed a request to transfer venue to San Diego county.[4] The family court set the matter for hearing in April.

1.    *February 2022 Temporary Emergency Orders*

In February Mother filed an ex parte request for an order modifying custody and/or visitation, to which Father filed a response, neither of which are included in the record. On February 22, the family court issued temporary emergency orders modifying the visitation schedule such that Father's visitation with Minor was limited to overnights every other weekend, and a visit every other Wednesday evening, with visitation to take place within a 20 mile radius of a specific location in San Diego. The orders set forth in the December 2021 statement of decision were to remain in effect to the extent they did not conflict with the new visitation schedule.

---

[4] Subsequent dates are in 2022 unless otherwise stated.

6

2. *Father's Request to Reinstate 2-2-3 Schedule; April 2022 Hearing*

On February 28, Father filed a request for an order reinstating the 2-2-3 parenting time schedule that was in place before Mother moved to San Diego.

In March, Father's attorney filed a motion to be relieved as counsel, which the court granted. Father represented himself at the April 2022 hearing on his request to transfer venue and his request to reinstate the 2-2-3 schedule. At that hearing, the court also considered a responsive request from Mother that the court order therapeutic visitation between Minor and Father in light of the fact that by the time of the hearing, Father had not spoken to or seen Minor in four months. The court stated it had reviewed the declarations that had been submitted by the parties. After hearing from the parties, the family court observed that Father had not seen Minor "for many, many months"; denied Father's request to reinstate the equal timeshare schedule; reinstated the visitation schedule established in its February 2022 orders; and put the matter over for review to July 2022 "to see how those visits are going." The court denied Mother's request for therapeutic visitation, stating that it would consider at the review hearing whether therapeutic visitation was necessary. The court also denied Father's request to transfer venue to San Diego County, based on its conclusion that a transfer of venue would not be in the best interest of Minor in light of the ongoing issues concerning visitation.

3. *July 2022 Review Hearing*

At the July hearing, Father provided an oral response to a declaration Mother had filed the week before updating the court on custody and visitation. The court stated that based on what it had heard from the parties at the hearing, as well as Mother's filed declaration (which is not included in

7

the record on appeal), it concluded that it was not in Minor's best interest to make any changes to the existing orders. The court ruled that the previous orders would remain in full force and effect and continued the matter to October 25 "for a last review to see if anything changes."

4. *October 2022 Review Hearing*

A week before the scheduled review hearing, Mother filed a declaration updating the court about custody and visitation, which, the family court reviewed. Like Mother's July update, however, it is not included in the record on appeal. Father did not file a declaration, but presented testimony at the hearing. Father testified that he had abided by the court's temporary orders and that he did not want them to become permanent. He stated that under the temporary orders, his only time with Minor was on weekends, and that Mother wanted him to take Minor to various activities on weekends which "take away from our experience as parents." He asked the court to restore the shared time schedule and shared custody that had been in place when both parties lived in San Mateo County. Under that arrangement, "[Mother's] time was her time; my time was my time. And we respected those . . . boundaries."

Mother's counsel argued that Father had not abided by the temporary orders, as evidenced by his refusal to spend any time with Minor in the first months after the move to San Diego. She also argued that Father refused to put Minor's needs first, as evidenced by the fact that although Minor enjoyed her Serbian class and soccer league, and those activities were good for her, Father regarded them as infringing on his time. Mother wanted the current orders to become permanent and wanted the court to confirm that Father was required to take Minor to the activities in which she was enrolled.

8

After the matter was submitted, the family court opened its discussion of the custody and visitation issues by expressing concern about Father's failure to "get[ ] better at . . . coparenting." The court noted that it had made custody and visitation orders based on evidence that included Father's representation that he was going to stay in the Bay Area, and that Father then moved and "create[d] a bunch of conflict and trauma and drama." The court observed that when Minor was younger, there were not a lot of extracurricular activities: "So were there a lot of extracurricular activities for a three-year-old? No. Are there now as a five-year-old? Yes. Two years is a big difference in that age, and it's only going to get worse, meaning it's not about your time. It's about doing things with your daughter that she enjoys doing. And if it means that it lands on, quote, 'your weekend,' I don't know what to tell you about that. It's about what she wants to do and that you are going to support that."

The court declined to make any changes to the current orders but stated it would "add and clarify that both parties must ensure that [Minor] attends her extracurricular activities during their parenting time." The court stated that it was making the existing orders permanent, and directed Mother's counsel to prepare the written order, which was filed on December 1, 2022. The order provided that Mother and Father shared legal custody of Minor; Mother had sole physical custody of Minor; Father's visitation with Minor was limited to every other weekend, from Friday evening to Sunday evening, and every other Wednesday evening, and was to take place within a prescribed geographical area; and both parties were to ensure that Minor attends all activities and lessons in which she was enrolled, including specifically Serbian class, soccer, and swimming lessons. The order stated

9

that it was intended by the court to be a "permanent and final order pursuant to *Montenegro v. Diaz* (2001) 26 Cal.4th 24[9] [(*Montenegro*)]."

Father timely appealed from the December 2022 order. Mother did not file a respondent's brief, and oral argument has been waived.[5] Therefore, we decide the appeal on the record and Father's opening brief. (Cal. Rules of Court, rule 8.220(a)(2).)[6]

## DISCUSSION

A.    *Principles of Appellate Practice*

Before turning to Father's arguments we summarize standards that apply to appeals. These same standards apply where parties represent themselves, as Father does here, and to appeals where parties are represented by counsel. (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210 [self-represented litigant is "treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys"].)

Orders challenged on appeal are presumed to be correct, and it is the appellant's burden to affirmatively show that the trial court erred. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564*.*) It is also the appellant's burden to show prejudice from any error. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963 (*Century Surety*).) The California Constitution permits reversal only if "the error complained of has resulted in a miscarriage of

---

[5] The record on appeal was not filed until January 2024 due in part to a default caused by Father's failure to deposit fees for the reporter's transcript. The default was cured by mid-December 2023. Father filed his opening brief in April 2024, after receiving a 60-day extension. Mother received a 60-day extension to file her brief, but then decided not to file one. The case was designated fully briefed in July 2024.

[6] Subsequent citations to rules are to the California Rules of Court.

justice." (Cal. Const., art. VI, § 13.) The Code of Civil Procedure provides that appealed judgments and orders may be reversed only if the record shows that an error was "prejudicial"; the error caused appellant "substantial injury"; and absent the error, "a different result would have been probable." (Code. Civ. Proc., § 475.)

An appellant must "support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).) In addition, an appellant must support the arguments in his brief by appropriate reference to the record. (*Air Couriers International v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 928; see rule 8.204(a)(1)(C) & (a)(2)(C) [appellant's opening brief must include a summary of significant facts limited to matters in the record, with any reference to a matter in the record supported by a citation to the volume and page number of the record].) Failure to provide an adequate record requires that the issue be resolved against the appellant. (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.)

B.     *Applicable Law and Standard of Review*

Under the California statutes that govern child custody and visitation, "the overarching concern is the best interest of the child." (*Montenegro, supra,* 26 Cal.4th at p. 255.) The factors to be considered in determining a child's best interest "include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents." (*Ibid.*, citing Fam. Code,

11

§ 3011.[7])  Once a final judicial custody determination has been made, whether that determination is reflected in an order made by a court after an adversarial proceeding or in a stipulated custody order, a "variation on the best interest standard" applies:  the "changed circumstance" rule, under which "a party seeking to modify a permanent custody order can do so only if he or she demonstrates a significant change of circumstances justifying a modification." (*Montenegro* at p. 256.)  A stipulated custody order constitutes a final judicial custody determination "only if there is a clear, affirmative indication the parties intended such a result." (*Id.* at p. 258.)

We apply the deferential abuse of discretion test in reviewing custody and visitation orders.  (*Montenegro*, *supra*, 26 Cal.4th at p. 255.)  "Under this test, we must uphold the trial court 'ruling if it is correct on any basis, regardless of whether such basis was actually invoked.' " (*Ibid.*) Our review of challenges to the family court's findings of fact "is limited to whether any substantial evidence, contradicted or uncontradicted, supports the trial court's ruling," resolving all conflicts in the evidence in favor of the prevailing party and drawing all reasonable inference to support the court's decision.  (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 300 (*Chalmers*).)  We " 'do not reweigh evidence or reassess the credibility of witnesses.' " (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) In any substantial evidence challenge, the appellant has the burden to set forth in his brief all the material evidence on the point, and not merely his own evidence.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark*).)  Failure to meet this burden results in the forfeiture of the claim.  (*Ibid.*)

---

[7] All further statutory references are to the Family Code unless otherwise stated.

12

C.    *Challenges to the December 2021 Order*

Father's appellate brief includes two headings that directly address the family court's December 2021 custody and visitation order:  first, that the court erred in finding that the April 2019 stipulated order was not final and permanent, and second, that the court erred by not ruling "individually" on Father's objections to the proposed statement of decision.  (See rule 8.204(a)(1)(B) [each appellate brief must "[s]tate each point under a separate heading or subheading summarizing the point"].)

1.    *Status of the April 2019 Stipulated Order*

As for the family court's finding that as of December 2021 there was no final and permanent custody order, Father does not even attempt to show that the finding is not supported by substantial evidence, as he is required to do.  (*Chalmers*, *supra*, 213 Cal.App.4th at p. 300.)  Instead, Father simply asserts that "[i]t is clear" the stipulated custody and visitation order entered in April 2019, which provided for shared physical custody, was intended by the parties to be permanent.  Father's say-so is not enough.  Father does not cite anything in the record other than the three pages of the order itself to support his claim of error.  The order does not state that it is a permanent order, and Father does not identify anything in the order that constitutes "a clear, affirmative indication [that he and Mother] intended such a result." (*Montenegro*, *supra*, 26 Cal.4th at p. 258.)  Father fails to show that the family court's finding was in error.

Under the same heading—which addresses only the family court's purported error in finding that there was no permanent custody order in the case—Father raises other issues connected to the December 2021 statement of decision in a discussion that is difficult to follow.  We understand Father to claim that in granting sole physical custody to Mother and allowing her to

13

move to San Diego with Minor, the court failed to consider all the circumstances bearing on Minor's best interest, in violation of section 3040, *In re Marriage of Burgess* (1996) 13 Cal.4th 25 (*Burgess*), and *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, (*LaMusga*).

In arguing that the court failed to consider all the circumstances, Father contends that the court disregarded or underemphasized certain evidence. This amounts to a request that we reweigh the evidence, which we will not do. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581 (*Schmidt*).) The question before us is whether there is substantial evidence to support the trial court's order, not whether the evidence might support a different result. (*Id.* at p. 582.) And to the extent Father would claim that the court's order is not supported by substantial evidence, his challenge must fail because to the extent he discusses evidence at all, rather than simply asserting his conclusions about what the evidence shows, he discusses only the evidence that favors him. (*Foreman & Clark, supra,* 3 Cal.3d at p. 881.) In particular, he says nothing about the evidence that Mother had shown she was more likely than Father to encourage an ongoing relationship between Minor and her other parent. This omission is important because it bears on section 3040, an authority on which Father relies.

Section 3040 includes the following language: "In making an order granting custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent, consistent with Sections 3011 and 3020."[8] (§ 3040, subd. (a)(1).) Yet the discussion in Father's brief concerning

---

[8] The relevant provisions of section 3011 are summarized in *Montenegro, supra,* 26 Cal.4th at page 255, as stated above. As relevant here, section 3020 provides that "it is the public policy of this state to ensure that children have frequent and continuing contact with both parents after the

14

the December 2021 statement of decision is silent as to this factor and the evidence that bears on it.  Section 3040 is of no help to Father here.

The cases that Father cites do not help him either.  In *Burgess* our Supreme Court held that "in an initial judicial custody determination based on the 'best interest' of minor children, a parent seeking to relocate does not bear a burden of establishing that the move is 'necessary' as a condition of custody." (*Burgess*, *supra*, 13 Cal.4th at p. 28-29.)  The case before us concerned just such a determination.  In such circumstances, the family court has "broad discretion to determine, in light of *all* the circumstances, what custody arrangement serves the 'best interest' of minor children." (*Id.* at p. 34.)  The court "may consider the extent to which the minor children's contact with their noncustodial parent will be impaired by relocating," but the court need not adopt any particular formula for visitation and need not make a custody determination that preserves the status quo.  (*Id.* at p. 36.)  In *Burgess*, as here, the family court satisfied the policy of section 3020 for frequent and continuing contact with both parents by ordering " 'liberal visitation' " between the children and the non-relocating parent.  (*Id.* at p. 37.)  Father fails to show that the family court here did anything that contravenes the precepts set forth in *Burgess*.

In his brief, Father calls our attention to a passage in *LaMusga*, where our Supreme Court reaffirmed its "statement in *Burgess* that 'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional

---

parents have . . . dissolved their marriage . . ., and to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy, except when the contact would not be in the best interests of the child." (§ 3020, subd. (b).)

15

bonds with the primary caretaker weigh heavily in favor of maintaining ongoing custody relationships." (*LaMusga, supra,* 32 Cal.4th at p. 1093.) Yet Father says nothing about the Supreme Court's conclusion about the force of that statement, which is simply that the family court must "consider[ ] this interest in stability." (*Ibid.*) Nor does he acknowledge a passage in the next paragraph of *LaMusga* where the Supreme Court explained that in any given case the weight to be accorded to the detriment relocation may cause to a child's relationship with a parent "must be left to the court's sound discretion." (*Ibid.*) The family court here did consider Minor's interest in stability, as reflected in its finding that there was "demonstrated detriment to [Minor] from the proposed relocation" because she would have less time with Father. The court concluded, however, that the detriment was outweighed by other considerations such that the relocation and change in custody was in Minor's best interest. Father has not shown that the family court abused its discretion in reaching its conclusion.

2. *Failure to "Rule Individually" on Objections to Statement of Decision*

Under a separate heading, Father contends that the trial court erred when it failed to provide an individual ruling on each of the eight objections that he raised to the proposed statement of decision. He fails to show error or prejudice.

a. *Additional Background*

As directed by the family court on the last day of the November 2021 hearing, Mother's counsel prepared a proposed statement of decision, which was submitted to the court and served on Father on December 16, 2021. The court adopted the proposed statement four days later. Notice of the entry of the statement of decision was served on Father on January 10, 2022. Two days later, the attorney who had represented Father earlier in the

16

proceeding, but had substituted out before the second day of the hearing, substituted back in as Father's counsel.

On January 25, 2022, Father filed an objection to the entry of the statement of decision on the grounds that it was entered by the court before the deadline established by rule 3.1590(f) for him to file objections, and also submitted eight individual objections to aspects of the statement of decision. Mother argued in response that the objections were substantively unfounded and in any event were untimely, because they were not filed within 15 days after the proposed statement of decision was served on Father as required by rule 3.1590(g).

On February 14, 2022, the family court issued an order stating as follows: "[w]ithout addressing the question of the timeliness of the objections ultimately filed by [Father], the court has now read and considered the objections . . . and hereby affirms the Statement of Decision that was executed and filed by the court on December 20, 2021."

b. *Analysis*

The February 14, 2022 order reflects that the family court concluded that Father's objections lacked merit. Father cites no authority suggesting that the court was required to provide an "individual" ruling on each of his objections. Nor does he provide any legal argument to support his contention that the family court erred in failing to do so. (*Allen, supra,* 234 Cal.App.4th at p. 52 [claims of error not supported by meaningful argument and authority are forfeited].) Further, Father does not argue that the family court erroneously rejected his objections—he does not even tell us what the objections were, and instead simply refers us to the pages of the record that contain his objections. To the extent Father seeks to incorporate into his appellate brief the trial court filing in which he stated his objections, we

17

disregard the purported incorporations. (See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20 ["[i]t is well settled that the Court of Appeal does not permit incorporation by reference of documents filed in the trial court"].) In addition, Father fails to show that he was prejudiced by the court's failure to provide "individual" rulings or by the court's rejection of his objections. (*Century Surety*, *supra*, 139 Cal.App.4th at p. 963.)

D.  *Challenge to Final Custody Determination*

Father contends that the family court abused its discretion in issuing its December 2022 custody and visitation order, which the court designated as a permanent and final order. He claims the order "was arbitrary and capricious." He cites no authority to support his argument, but asserts that the family court disregarded certain evidence that he presented at the April, July, and October 2022 hearings, and that the family court's statements at the October 2022 hearing show that the "court penalized [him] for putting his daughter first, and moving to San Diego to be near her and to have more time with her." Father's contentions lack merit.

In claiming that the family court disregarded evidence that he presented, Father again asks us to reweigh evidence, which we will not do. (*Schmidt*, *supra*, 44 Cal.App.5th at p. 581.) To the extent Father claims that the family court's orders are not based on substantial evidence, his claim is foreclosed by his presentation of only his own arguments and evidence (*Foreman & Clark*, *supra*, 3 Cal.3d at p. 881) and his failure to provide a record that is adequate to show error. Father has omitted from the record material information that the trial court reviewed and considered— specifically the declarations that he and Mother filed in the family court pertaining to custody and visitation. (See *Gonzalez v. Rebollo* (2014) 226

18

Cal.App.4th 969, 977 [failure to provide adequate record prevents appellant from prevailing on substantial evidence challenge].)

But in any event, nothing in the limited record that Father has provided shows that the family court's determination constitutes an abuse of discretion. In particular, nothing in the court's statements suggests that Father was penalized in any way for moving to San Diego. Based on the evidence before it, which included evidence that Father had not visited with Minor for four months in early 2022 after he moved to San Diego and that Father objected to taking Minor to her scheduled extracurricular activities during his custodial time, the court concluded that Father was not cooperating in coparenting, and that it was in Minor's best interest to maintain the custody determination that had been made in December 2021 and the visitation orders that had been made in February 2022.

E. *Failure to Engage Impartial Child Custody Evaluator*

Father contends that the trial court erred by failing to order an independent custody evaluation at any time during the case. Father fails to show error by the family court in this respect because he does not cite any authority, nor provide any legal argument, to support the proposition that the court was required to order such an evaluation, or that the court abused its discretion by not ordering one. (See § 3111, subd. (a) [authorizing the court to appoint a child custody evaluator in a contested proceeding involving child custody or visitation rights]; Evid. Code, § 730 [authorizing the court on its own motion or on a motion by a party to appoint an expert to testify on a "matter as to which the expert evidence is or may be required"]; Albaum et al., Cal. Child Custody Litigation and Practice (Cont.Ed.Bar Apr. 2024 Update) § 9.14, p. 9-11 [statutes give family court "broad discretion" to appoint a custody evaluator].) Further, Father fails to show prejudice,

19

because he has not shown that the outcome of the case would have been any different if an independent evaluation had been ordered.  (*Century Surety*, *supra*, 139 Cal.App.4th at p. 963.)

## DISPOSITION

The December 1, 2022 final custody and visitation order is affirmed.

                                            _____
                                            Miller, J.


WE CONCUR:


_____
Stewart, P.J.


_____
Desautels, J.


A166932, *Roy v. Roy*